UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LLOYD WICKBOLDT,

Plaintiff,

v.                                            Case No: 6:17-cv-2208-Orl-28EJK

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY,

Defendant.
_____

# ORDER

In this dispute over interpretation of a disability insurance policy,[1] Dr. Lloyd Wickboldt moves for summary judgment on his claims for a declaratory judgment and for damages for breach of contract against Massachusetts Mutual Life Insurance Company (MassMutual). (Mot. Summ. J., Doc. 34). And although Mass Mutual did not file a motion of its own, the parties agree that there are no disputed material facts and that denial of Dr. Wickboldt's motion "should result in the entry of judgment in favor of MassMutual." (Doc. 44 at 2 & n.1). After review of the record and the parties' submissions on Dr. Wickboldt's motion, the Court concludes that Dr. Wickboldt's motion must be denied and that judgment must be entered for MassMutual.

## I. Background

### A. Factual History

In 1985, Dr. Wickboldt—then a 33-year-old practicing dermatologist—applied for

---

[1] The Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) due to the parties' diverse citizenship and the amount in controversy.

and obtained a policy of disability insurance[2] from MassMutual's predecessor.[3] In addition to the Basic Policy (Doc. 34-1 at 3 through 7), Dr. Wickboldt also purchased a Cost of Living Rider (COLA Rider) (Doc. 34-1 at 8 & 9) at the same time.[4] A year later, he purchased another rider—the Lifetime Total Disability Benefits Rider (Lifetime Rider). (Doc. 34-1 at 10). The Basic Policy and COLA Rider had an effective date of September 1, 1985; the Lifetime Rider, September 1, 1986. (Coverage Page, Doc. 34-1 at 17). And under the policy's terms, "[a]n Anniversary falls each year on the same month and day as the effective date," (Doc. 34-1 at 4)—in other words, every September 1.

In 2000, at the age of forty-eight, Dr. Wickboldt became totally disabled—defined in the policy as unable, "because of sickness or injury," to "do the main duties of [his] occupation," (Doc. 34-1 at 4)—and he has remained totally disabled since then. MassMutual began paying monthly benefits shortly after Dr. Wickboldt became totally disabled and continues to pay benefits to him. But the parties dispute the amount of benefits to which Dr. Wickboldt is and has been entitled since September 1, 2017—the policy Anniversary following his sixty-fifth birthday.

B.   **Pertinent Policy Provisions**

The Basic Policy provides for payment of benefits for "total disability"[5] beginning one month after an elimination period. (Doc. 34-1 at 4). The amount of the monthly benefit is

---

[2] Policy Number 4467286.
[3] The policy was issued by Connecticut Mutual Life Insurance Company, which MassMutual acquired by merger in 1996. (See Doc. 34 at 1–2, Doc. 34-1 at 3; Doc. 37 at 4).
[4] Dr. Wickboldt also purchased other riders in 1985, but they are not relevant to this lawsuit.
[5] In addition to benefits for "Total Disability," the Basic Policy also provides for benefits for "Residual Disability." (Doc. 34-1 at 5). An insured is "residually disabled" if, "because of sickness or injury, he "can do some, but not all, of the main duties of [his] own

2

described as the "basic monthly benefit shown on the Coverage Page"[6]—$8,000—"multiplied by the ratio of [Dr. Wickboldt's] loss of income to [his] predisability income." (Doc. 34-1 at 4). Dr. Wickboldt began receiving disability benefits of $8,000 per month in mid-2000.

The COLA Rider provides for the payment of monthly "benefit increases"—the amount of which adjusts each year based on the Consumer Price Index[7]—starting after one year of disability. The COLA Rider states in part:

> This rider provides monthly benefit increases while you're totally or residually disabled. . . .
>
> . . . .
>
> **When We'll Pay Monthly Benefit Increases.** We'll pay monthly benefit increases while you're receiving total or residual disability benefits.
> The benefit increases will start after you've been totally and/or partially disabled for 12 months, or the full elimination period, if longer. We'll make the first payment one month later.
>
> . . . .
>
> **How Long We'll Pay Benefit Increases.** While you're totally or residually disabled, we'll pay benefit increases until the earliest of:
> - the date your total or residual disability ends;
> - the date the maximum benefit period under this rider ends;
> - the anniversary on or after your 65th birthday.

(Doc. 34-1 at 8 (emphasis in original)). Pursuant to this rider, after twelve months of

---

occupation." (Doc. 34-1 at 4). It is undisputed that at all relevant times, Dr. Wickboldt has been totally rather than residually disabled.

[6] The Coverage Page is attached as an Appendix to this Order.

[7] The COLA Rider provides for compounded benefit increases. For example, assuming a starting benefit amount of $8,000 and a constant percentage of 5%, after one year of disability the initial benefit increase would be $8,000 x 5% = $400. This would result in monthly payments totaling $8,400 for twelve months. After those twelve months, the next benefit increase would be $8,400 x 5% = $420, resulting in monthly payments totaling $8,820 for the next twelve months. And so on. (See Doc. 34-1 at 8 (explaining the compounding of benefit increases)).

3

receiving $8,000 in monthly benefits under the Basic Policy, in 2001 Dr. Wickboldt continued to receive those benefits each month and also began to receive monthly benefit increases. By June 2015, Dr. Wickboldt was apparently receiving a total of approximately $16,000 per month in combined benefits—that is, $8,000 per month under the Basic Policy plus an additional $8,000 or so[8] per month in "benefit increases" under the COLA Rider.

Finally, the Lifetime Rider provides:

> This rider provides monthly total disability benefits to be paid beyond the Anniversary on or after your 65th birthday. Benefits will be paid for life. . . .
>
> . . . .
>
> **Eligibility.** To qualify for monthly total disability benefits under this rider you must meet three conditions:
> - you must be totally disabled.
> - you must have become totally disabled before the Anniversary on or after your 65th birthday and remained totally disabled since. A recurring disability will not affect your eligibility.
> - the Anniversary on or after your 65th birthday must have occurred.
>
> **When We'll Pay Monthly Total Disability Benefits.** If you're eligible, your monthly benefits under this rider will start after the Anniversary on or after your 65th birthday. We'll make the first payment 1 month after that Anniversary. We'll continue to make monthly payments as long as you remain totally disabled.
>
> **Monthly Total Disability Benefit.** The largest amount of monthly benefit you will receive under this rider is shown on the current Coverage Page of your policy. . . .

(Doc. 34-1 at 10 (emphasis in original)). After September 1, 2017, MassMutual began paying Dr. Wickboldt $8,000 per month under the Lifetime Rider, without benefit increases under the COLA rider—a total of $8,000 per month.

---

[8] The parties have not provided details about all of the specific amounts that MassMutual paid to Dr. Wickboldt; they have only generally described the history of the case and the nature of their disputes.

4

There is no dispute that MassMutual paid Dr. Wickboldt the correct amount of benefits under both the Basic Policy and the COLA Rider until September 1, 2017—the Anniversary after his 65th birthday.[9] The parties' disagreement is about the amount of monthly benefits that MassMutual is obligated to pay since that date—specifically, whether the COLA Rider applies to the benefits Dr. Wickboldt receives under the Lifetime Rider.[10] Dr. Wickboldt explains that he "reads the documents to mean that he will continue to receive both the base monthly benefit and the increased benefits resulting from the [COLA Rider] for so long as he remains disabled and is receiving benefits under the [Lifetime Rider]." (Doc. 34 at 3). MassMutual, on the other hand, maintains that entitlement to benefit increases under the COLA Rider ended on September 1, 2017, and that since then Dr. Wickboldt has been entitled only to benefits under the Lifetime Rider—a constant $8,000 per month. (Doc. 37 at 2).

---

[9] Initially, Dr. Wickboldt also challenged the amount of benefit increases MassMutual paid him under the COLA Rider starting in June 2015, but the parties have apparently resolved that portion of the case. (See Compl. ¶ 11 (describing "[a]n additional dispute . . . regarding the interpretation of the 'Maximum Monthly Benefit Increase' provisions of [the COLA] Rider"); Mot. Summ. J. at 8 n.6 ("The amount of the Maximum Monthly Benefit under the [COLA] Rider is no longer in issue in this action since [MassMutual] amended its answer and paid additional benefits in accordance with Dr. Wickboldt's claims involving this provision of the rider." (emphasis removed)). To the extent the parties have resolved some of Dr. Wickboldt's claims, those claims are moot and are not addressed in this Order.

[10] There are two aspects to this issue about the amount: (1) whether the monthly amount Dr. Wickboldt should have initially received after September 1, 2017, is $8,000 or instead is "the base benefit increased by [the COLA Rider benefit increases] since" the onset of benefits in 2000—the amount he was receiving in the months up to that time, at least $16,000 per month; and (2) whatever that correct "initial" amount is, whether that amount is in turn "to be increased in the future" based on further annual adjustments under the COLA Rider. (Mot. Summ. J. at 12).

## II. Discussion

### A. Legal Standards

The parties agree that Florida substantive law governs this diversity case. Interpretation of an insurance policy is a question of law for the court. Kattoum v. N.H. Indem. Co., 968 So. 2d 602, 604 (Fla. 2d DCA 2007). And under Florida law, "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto." § 627.419(1), Fla. Stat.

"[I]nsurance contracts are construed in accordance with the[ir] plain language . . . , as bargained for by the parties." Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000). "Ambiguities in insurance contracts are interpreted against the insurer and in favor of the insured." Garcia v. Fed. Ins. Co., 969 So. 2d 288, 291 (Fla. 2007). But "[t]o allow for such a construction . . . the provision must actually be ambiguous." Id.

### B. Application

Applying these principles to the terms of Dr. Wickboldt's disability insurance policy, there is no ambiguity regarding whether Dr. Wickboldt is entitled to benefit increases beyond September 1, 2017. Under the plain language of the policy documents, after September 1, 2017, Dr. Wickboldt is entitled to receive $8,000 in benefits under the Lifetime Rider but is not entitled benefits under the Basic Policy or to past or future benefit increases under the COLA Rider.

The Coverage Page explains that benefits under the Basic Policy are payable only until September 1, 2017. It indicates that the "maximum benefit period" under the Basic Policy is "to 65" and explains that the "benefit period for disability is [the insured's] specified benefit period, but not beyond Sep 01 2017," with the caveat that the benefit period might

6

extend beyond that date "if [the insured] qualif[ies] for benefits under the [Lifetime Rider]." (Doc. 34-1 at 17). The COLA Rider also expressly states that MassMutual will "pay benefit increases until the **earliest of**: the date . . . total or residual disability ends; the date the maximum benefit period under this rider ends; [or] the anniversary on or after [the insured's] 65th birthday." (Doc. 34-1 at 8 (emphasis added)). Regardless of which of these dates ended up being the latest, it is clear that benefit increases would not be paid beyond September 1, 2017—the policy Anniversary on or after Dr. Wickboldt's 65th birthday.

Additionally, the Lifetime Rider plainly states that "[t]he largest amount of monthly benefit you will receive under this rider is shown on the current Coverage Page of your policy." (Doc. 34-1 at 10). The Coverage Page lists the "monthly benefit" under the Lifetime Rider as $8,000 and states that "Your Maximum Monthly Benefit is $8,000." (Doc. 34-1 at 17). Moreover, $8,000 is the largest amount listed anywhere on the Coverage Page. (Id.).

Dr. Wickboldt repeatedly concedes in his filings that both disability benefits under the Basic Policy and benefit increases under the COLA Rider ceased at age 65. (See, e.g., Compl. ¶ 30 ("Both the Bas[ic] Policy and the [COLA] Rider . . . provide[] a benefit that unquestionably ends at age 65."); Mot. Summ. J. at 2–3 ("Under the said policy as originally issued, . . . Dr. Wickboldt would be paid the base monthly benefit only until the policy anniversary date following his sixty-fifth birthday, or until September 1, 2017.")). He also acknowledges that he "evidently was made aware that payments under the basic policy ceased after his 65th birthday because he subsequently purchased [the Lifetime Rider], the sole purpose of which is to extend his disability payments for so long as he is disabled *after* the post-65 cut-off date." (Mot. Summ. J. at 7 (emphasis in original)). He also notes

7

that "it is undisputed that [his] [Lifetime Rider], rather than his original Policy[,] provide[s] the basis upon which [he] i[s] entitled to benefits." (Reply, Doc. 43, at 6).[11]

Dr. Wickboldt nevertheless contends that the Lifetime Rider somehow extended the Basic Policy and COLA Rider beyond their plain terms and beyond their clearly stated termination date—at the latest, September 1, 2017. This contention is rejected. Again, the COLA Rider expressly states that benefit increases will be paid no longer than until "the anniversary on or after your 65th birthday." (Doc. 34-1 at 8). Dr. Wickboldt has identified no basis to override this clearly stated termination date, and the Court discerns none in the policy documents.

Dr. Wickboldt's efforts to override the plain policy language are flawed. To the extent he attempts to argue that "maximum benefit period" under the Basic Policy is not defined, (Doc. 34 at 6), this argument is belied by the plain language of the Coverage Page as well as by his concessions elsewhere both that those benefits ceased at age 65 and that the benefits he now seeks are not under the Basic Policy but under the Lifetime Rider. And in any event, the Coverage Page also clearly states that the benefit period is extended, where applicable, beyond September 1, 2017, for benefits under the Lifetime Rider—an "extension" with which MassMutual is complying by paying benefits under the Lifetime Rider.

Dr. Wickboldt's attempt to rely on language in the preamble and body of the COLA Rider also fails. The preamble states that "[t]his rider provides monthly benefit increases

---

[11] In other portions of his motion, Dr. Wickboldt seems to hedge on his concession regarding when benefits under the Basic Policy terminated. (See, e.g., Doc. 34 at 3 n.1, 5–6, and 11). But because the policy provisions and Coverage Page plainly provide that benefits under the Basic Policy ended on September 1, 2017, and because Dr. Wickboldt repeatedly concedes this in his filings, the Court deems this point established.

8

while you're totally or residually disabled," (Doc. 34-1 at 8), and similar language appears under the subheading "When We'll Pay Monthly Benefit Increases," (id. ("We'll pay monthly benefit increases while you're receiving total or residual disability benefits.")). Dr. Wickboldt contends that "[t]his language surely suggests that the benefits under the [COLA] Rider are time limited only by the period of disability." (Doc. 34 at 8). But this contention fails in the face of the plain and obvious limiting language in the COLA Rider under the subheading "How Long We'll Pay Benefit Increases." (Doc. 34-1 at 8).

Dr. Wickboldt next argues that the Lifetime Rider "overrides" the limiting language in the COLA Rider, suggesting that alleged "contradictory language" within the COLA Rider "is reconciled if we add to the three bullet points [in the COLA Rider] the unwritten qualifier, 'Unless you have purchased the lifetime rider.'" (Doc. 34 at 9). But the COLA Rider does not contain this caveat, and Dr. Wickboldt is attempting to add terms to the policy that were never agreed to by MassMutual.

Dr. Wickboldt also asserts that the second bullet point in the COLA Rider's "How Long We'll Pay Benefit Increases" section—"the date the maximum benefit period under this rider ends"—must mean something "beyond the 65th birthday cutoff." (Doc. 34 at 9). But even if it did, the time limitation in the COLA Rider hinges on "the earliest of" the three bullet points, and if the second bullet point refers to a date later than "the 65th birthday cutoff," the 65th birthday cutoff would still control because it is earlier.

As a basis for extending payment of benefit increases beyond age 65, Dr. Wickboldt also attempts to find fault with the Coverage Page, arguing that it suggests that benefit increases are to be paid beyond age 65. But nothing on the Coverage Page suggests this, and again, the COLA Rider is plain with regard to how long benefit increases will be paid.

9

Dr. Wickboldt also asserts that the Lifetime Rider's reference to the maximum benefit amount being "shown on the Coverage Page" is unclear—averring that the Coverage Page "shows no clearly identifiable 'largest' number." (Doc. 34 at 11). But as earlier noted, the Coverage Page lists $8,000 as the monthly benefit under the Lifetime Rider, states that "Your Maximum Monthly Benefit is $8,000," and lists no larger amount anywhere. (Doc. 34-1 at 17). And although Dr. Wickboldt avers that the Coverage Page states "see your rider for details" only with regard to the Lifetime Rider, this is not accurate; the middle of the Coverage Page clearly states "Additional Benefits—see Attached Riders for Details," plainly informing insureds to read all purchased riders—including the listed COLA Rider—for specifics about the benefits they provide. (Doc. 34-1 at 17).

Finally, to the extent Dr. Wickboldt urges this Court to rely on a "reasonable person" or "reasonable expectation" standard to construe the policy in his favor, (see Doc. 34 at 13; see also Doc. 43 at 3 (referring to "what the average insured would understand")), that attempt is not well-taken. First of all, the Supreme Court of Florida has rejected the "doctrine of reasonable expectations" in construing insurance policies. See Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So. 2d 1135, 1140 (Fla. 1998) ("We decline to adopt the doctrine of reasonable expectations. . . . Construing insurance policies upon a determination as to whether the insured's subjective expectations are reasonable can only lead to uncertainty and unnecessary litigation."). And in any event, it is not reasonable for an insured to expect coverage that is completely contrary to plain policy provisions.

In sum, the plain language of the pertinent policy provisions reveals no ambiguity. Under both the Basic Policy and the COLA Rider, Dr. Wickboldt was entitled to benefits

only until September 1, 2017. Since that date, MassMutual is obligated to pay him benefits only pursuant to the Lifetime Rider, without past or future benefit increases under the COLA Rider.[12]

### III. Conclusion

Accordingly, it is **ORDERED**:

1. The Motion for Summary Judgment (Doc. 34) filed by Dr. Wickboldt is **DENIED**. MassMutual is entitled to judgment in its favor on Dr. Wickboldt's claims for a declaratory judgment and for breach of contract.

2. The Clerk is directed to enter a judgment providing that Plaintiff, Lloyd Wickboldt, takes nothing from Defendant, Massachusetts Mutual Insurance Company, on his claims in this case and further providing that Defendant is not obligated to pay past or future benefit increases to Plaintiff under Policy Number 4467286, including any of its riders, beyond September 1, 2017.

3. The parties have indicated that they intend to seek attorney's fees. (See Doc. 44 at 3). Any application for attorney's fees must be submitted in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court.

**DONE** and **ORDERED** in Orlando, Florida, on September 5, 2019.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

---

[12] Neither party has presented any binding authority interpreting a policy identical to this one, and the Court has found none. Dr. Wickboldt relies in part on a Massachusetts circuit court case interpreting the same policy and reaching the opposite conclusion—under Massachusetts law—about entitlement to COLA Rider benefits beyond age 65. This Court respectfully disagrees with the decision in that case, which Dr. Wickboldt acknowledges is "in no way binding on this Court." (Doc. 34 at 13).