# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**LLOYD WICKBOLDT,**

               **Plaintiff,**

**v.**                                                    **Case No. 6:17-cv-2208-JA-EJK**

**MASSACHUSETTS MUTUAL**
**LIFE INSURANCE COMPANY,**

               **Defendant.**

_____

## ORDER

After the Eleventh Circuit affirmed this Court's judgment in favor of Defendant, Defendant filed two motions for attorneys' fees (Docs. 85 & 89)[1] under Florida's offer-of-judgment statute.   The assigned United States Magistrate Judge has submitted a Report (Doc. 94) recommending that the Court deny the motions because Defendant's offer of judgment was invalid.   In the alternative, the Report recommends reductions in the hours and hourly rates claimed by Defendant.   Defendant filed Objections (Doc. 95) to the Report, and Plaintiff filed a Response (Doc. 96).

_____

[1] A prior motion (Doc. 52) was denied without prejudice pending the outcome of the appeal.  (See Order, Doc. 74).

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). And the Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. Having done so, the Court finds that several, but not all, of Defendant's objections have merit and that Defendant is entitled to fees under the offer-of-judgment statute, though in a lesser amount than Defendant claims.

## I. Background

In the 1980s, Plaintiff procured disability insurance from Defendant, obtaining a Basic Policy, a Cost of Living Rider (COLA Rider), and a Lifetime Total Disability Benefits Rider (Lifetime Rider). In 2000, when Plaintiff became "totally disabled" within the meaning of the policy, Defendant began paying Plaintiff monthly disability benefits and continues to do so. But between 2015 and 2017, two disputes arose between Plaintiff and Defendant regarding the amount of monthly benefits that Defendant is obligated to pay to Plaintiff.

First, since 2001 Defendant had been paying Plaintiff monthly "COLA increases"—adjusted annually based on the Consumer Price Index—in addition to monthly benefit payments under the Basic Policy. But the parties disagreed about whether Defendant was obligated to continue to augment the COLA

increases beyond May 2015.[2]  Second, the parties disagreed about the effect of the Lifetime Rider on Defendant's obligation to pay COLA increases of any amount after September 1, 2017—the "policy anniversary" following Plaintiff's sixty-fifth birthday.  As of that date, Defendant began paying Plaintiff $8,000 per month under the Lifetime Rider and stopped paying any COLA increases on top of that.  But Plaintiff maintained that he was entitled to more, including COLA increases for the rest of his life so long as he remained disabled.

These two disputes prompted Plaintiff to file this lawsuit in November 2017.  Plaintiff's Complaint (Doc. 2) asserted two counts:  one requesting a declaratory judgment (a) that Plaintiff is entitled to continued COLA increases up to a maximum of $16,000 in additional benefits and (b) that Plaintiff is entitled to COLA increases for the rest of his life, so long as he is disabled (Count I), (see Compl. at 14); and a second count parallelly alleging breach of contract based on (a) Defendant's failure to continue to augment the COLA increases after May 2015, (see Compl. ¶ 42), and (b) Defendant's failure to pay any COLA increases after September 1, 2017, (see Compl. ¶ 41).  Before the end of 2018,

---

[2] As alleged in the Complaint, Defendant stopped further adjusting the COLA increases in June 2015, taking the position that the maximum increase amount had been reached by that date.  (See Compl., Doc. 2, ¶ 11).  Plaintiff, on the other hand, urged that the maximum COLA increase was larger and had not yet been reached by June 2015.  (Id.).

the parties had resolved the first dispute described above. (<u>See</u> Pl.'s Mot. Summ. J., Doc. 34, at 8 n.6).

After the parties had resolved their disagreement about the maximum amount of COLA increases, Plaintiff filed a Motion for Summary Judgment (Doc. 34) on the remaining dispute—whether, after September 1, 2017, Plaintiff is entitled to benefits of only $8,000 per month under the Lifetime Rider (as urged by Defendant) or to a higher amount along with continuing COLA increases (as urged by Plaintiff). Summary judgment briefing was completed by February 28, 2019. (<u>See</u> Resp., Doc. 37; Reply, Doc. 43). On April 10, 2019, Defendant presented Plaintiff with an Offer of Judgment under section 768.79, Florida Statutes, offering to pay Plaintiff a specified lump sum plus a specified amount of monthly payments for the rest of his life. (Doc. 85-1 at 3).[3] Plaintiff did not accept the offer within thirty days.

Ultimately, the Court denied Plaintiff's summary judgment motion, concluding that since September 1, 2017, Plaintiff is entitled to "benefits only pursuant to the Lifetime Rider" and that Defendant "is not obligated to pay past or future [COLA] increases to Plaintiff under [the policy], including any of its

---

[3] The amounts of the lump sum and the monthly payments are redacted in the copy of the offer that was filed with this Court, (<u>see</u> Doc. 85-1 at 3), though the Court is aware of those amounts from the appellate court filings. The specific amounts are not material to the resolution of the attorneys' fees motions. There is no question that both amounts are in excess of what Defendant is obligated to pay Plaintiff pursuant to the judgment.

riders, beyond" that date.  (Summ. J. Order, Doc. 47, at 11).  Judgment was entered accordingly.  (Doc. 48).  Plaintiff appealed and the Eleventh Circuit affirmed, agreeing with this Court that the Lifetime Rider does not "extend benefits under either the Basic Policy or the COLA Rider" but instead "contains its own benefits provision," (11th Cir. Op., Doc. 79, at 8)—pursuant to which Plaintiff is entitled to be paid a constant $8,000 per month after September 1, 2017, (see id. at 10).

## II.    Discussion

Defendant now seeks to recover the attorneys' fees it incurred since it tendered its offer of judgment to Plaintiff.  (Mots., Docs. 85 & 89).  In its first motion, Defendant requests fees incurred in this Court since April 10, 2019—$8,407.50.  (See Doc. 85).  And in its second motion Defendant requests $83,038.25 in fees that it incurred on appeal starting on October 10, 2019.[4]  (See Doc. 89 at 15).  Both of these motions are based on Florida's offer-of-judgment statute—section 768.79, Florida Statutes.

In pertinent part, section 768.79 provides:  "In any civil action for damages filed in the courts of this state, if a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to

---

[4] The Eleventh Circuit granted Defendant's "Motion to Transfer Consideration of Appellate Attorney's Fees to the District Court," (see Doc. 88), so both motions are before this Court for resolution.

recover reasonable costs and attorney's fees incurred . . . from the date of filing of the offer if the judgment is one of no liability or the judgment obtained by the plaintiff is at least 25 percent less than such offer . . . ." § 768.79(1), Fla. Stat. The statute requires that an offer: "(a) Be in writing and state that it is being made pursuant to this section.  (b) Name the party making it and the party to whom it is being made.  (c) State with particularity the amount offered to settle a claim for punitive damages, if any.  (d) State its total amount." <u>Id.</u> § 768.79(2). And "[t]he offer shall be construed as including all damages which may be awarded in a final judgment." <u>Id.</u>  The offer that Defendant made to Plaintiff states in relevant part:

> 1.  This Offer of Judgment is being made by [Defendant] to [Plaintiff] pursuant to Fla. Stat. § 768.79. . . .

> 2.  [Defendant] hereby conveys an Offer of Judgment pursuant to which, if accepted, (a) [Defendant] will pay Plaintiff [redacted], representing a lump sum payment . . . , within fourteen (14) days of Plaintiff's acceptance of the Offer of Judgment, and (b) [Defendant] will pay Plaintiff [redacted] per month for the remainder of Plaintiff's life . . . . Upon acceptance of this Offer of Judgment, Policy No. 4467286, including all riders, will be deemed canceled and shall have no further force or effect.

> 3.  This Offer of Judgment resolves all damages that would otherwise be awarded in a final judgment in this matter.  This includes any and all claims against [Defendant] that were raised in this action or could have been raised in this action by Plaintiff, as well as any and all damages sought by Plaintiff, including attorneys' fees, costs, and punitive damages.

> 4.  This Offer of Judgment includes all attorneys' fees sought by Plaintiff because attorneys' fees are part of Plaintiff's legal claim.

5.    There are no conditions imposed with this Offer of Judgment.

(Doc. 85-1 at 2–3).

In his Report, the magistrate judge concluded that Defendant's offer of judgment was not valid because it does not state its total amount and because it contains an invalid condition.  Defendant objects to both of these conclusions, and Plaintiff urges a third basis for the offer's invalidity.  The Court addresses these arguments in turn and "look[s] to Florida law to determine whether § 768.79 should be applied in this case."  Jones v. United Space All., LLC, 494 F.3d 1306, 1310 (11th Cir. 2007).

## A.    "Total Amount"

In the Report, the magistrate judge concluded that Defendant's offer did not meet the requirement in section 768.79(2)(d) that the offer must "[s]tate its total amount."  The Report reasoned: "Because the total amount offered cannot be determined and is dependent on how long Plaintiff lives or remains disabled, the undersigned concludes that [Defendant's] offer is conditional because it does not include a determinate 'total amount' required by § 768.79 and Rule 1.442.[5] Moreover, this conditionality divests the Plaintiff of certainty on what the actual settlement will be."  (Doc. 94 at 5).

Defendant objects to the Report's conclusion regarding "total amount,"

---

[5] Like section 768.79(2)(d), Florida Rule of Civil Procedure 1.442(c)(2)(D) requires that an offer "state the total amount of the proposal."

and that objection is well-taken.[6]  The offer of judgment sufficiently states the total amount that is being offered.  As Defendant aptly notes, the terms of the offer mirror the relief sought by Plaintiff in this case—payment of monthly benefits in a defined amount from September 1, 2017, onward.  Although the duration of Plaintiff's life cannot be predicted, this does not create any question about the "total amount" of Defendant's offer.  Defendant offered a specific lump sum amount along with a specific monthly payment amount for the duration of Plaintiff's life.  This is sufficient to describe the "total amount" of the offer for purposes of section 768.79 under the circumstances of this case.  The "for life" term does not deprive Plaintiff of certainty about what is being offered; indeed, the offer is crystal clear as to both the amount and duration of payments.  See Allen v. Nunez, 258 So. 3d 1207, 1211 (Fla. 2018) (explaining that "the proposal must be sufficiently clear and free of ambiguity to allow the offeree the opportunity to fully consider the proposal").

And the offer is not dependent on Plaintiff remaining disabled as stated in Plaintiff's response to the motion, (see Doc. 87 at 10), and in the Report, (see Doc. 94 at 5).  The Lifetime Rider—the only provision still in effect—requires Plaintiff to "remain totally disabled" in order to continue to receive benefits, (see

---

[6] Although Plaintiff filed a Response (Doc. 96) to Defendant's Objections, in that Response Plaintiff does not address Defendant's specific objections but instead argues that another ground—not addressed in the Report—exists for denying Defendant's fee motions.  That argument is addressed later in this Order.

Doc. 34-1 at 10), but Defendant's offer—which would, if accepted, take the place of that policy—does not contain that limitation, (see Doc. 85-1 ¶ 2 (stating that Defendant "will pay Plaintiff [redacted] per month for the remainder of Plaintiff's life" without requiring that he remain disabled)).   Defendant's objection on this point is sustained, and the Court finds that the offer indeed "[s]tate[s] its total amount" as required by section 768.79(2)(d).

### B.   Invalid Condition/Overbreadth

The Report also concluded that Defendant's offer contains an invalid condition because of its release language, which provides that if the offer is accepted, the policy and all of its riders "will be deemed canceled and shall have no further force or effect." (Doc. 85-1 ¶ 2).  The Report reasoned: "Separate from the subject matter of the suit, Plaintiff retained a lifetime rider that would continue to extend the basic monthly benefit for life.  If accepted, the general release would have invalidated this separate rider, which was outside the scope of the ongoing lawsuit.  Because the Offer of Judgment extended the scope of release to include this rider, the undersigned finds the Offer of Judgment to be overly broad." (Doc. 94 at 6).  Defendant objects to this conclusion, and again the Court agrees with Defendant.

The Offer of Judgment does not contain an invalid condition, nor is it overly broad.  As Defendant notes in its Objections, the Lifetime Rider was indeed at issue in this case; the question of policy interpretation that was

squarely presented and determined in the Court's summary judgment ruling was the effect of the Lifetime Rider on the amount of Plaintiff's benefits beyond September 1, 2017. Defendant offered a lump sum and a specific stream of payments in settlement of the case. The offer, if accepted, would have resulted in an obligation of Defendant to pay money to Plaintiff—an obligation grounded in a settlement between the parties rather than in the insurance policy, interpretation of which would have been avoided by the settlement. The offer's provision that the policy would no longer be in effect merely reflects that Defendant's policy-based obligation to pay would be replaced by its settlement-based obligation to pay.[7] The offer does not contain an invalid condition, and Defendant's objection to this portion of the Report is sustained.

---

[7] Plaintiff asserts in his response to Defendant's fees motion that Defendant "cannot create a condition in the offer of judgment requiring Plaintiff to surrender the Policy or otherwise have the insurance policy canceled or of no further force or effect." (Doc. 87 at 10). Plaintiff does not explain why this is so, nor is it so. And Plaintiff argues that he "has a continuing right to benefits under the Base Policy which cannot be canceled by any judgment and are in fact not even subject to the claims under the lawsuit." (Id.). But he does not have any further right to benefits under the Basic Policy. (See, e.g., Eleventh Cir. Op., Doc. 79, at 8 ("[T]he Lifetime Rider creates a new set of benefits—wholly unrelated to benefits paid out under the Basic Policy and based on a new means of calculating those benefits . . . . By the time Lifetime Rider benefits begin, benefits under both the Basic Policy and the COLA Rider benefits have ended. [Plaintiff] agreed with this interpretation before the District Court.")). And even though Plaintiff does (having not accepted Defendant's offer of judgment) have rights to continued payments under the Lifetime Rider, nothing in the offer-of-judgment statute renders improper an offer that requires negation of an insurance policy or other contract in favor of a separate settlement agreement.

### C.    "Action for Damages"

Although Plaintiff does not address Defendant's objections in his Response (Doc. 96), Plaintiff argues that Defendant's motions for fees should be denied for another reason not addressed in the magistrate judge's Report—because section 768.79 does not apply in cases where a plaintiff seeks both damages and equitable relief.[8]  Plaintiff relies on section 768.79(1)'s initial phrase—"[i]n any civil action for damages"—and the fact that his Complaint included a claim for declaratory relief as well as a claim for damages.  But having considered Plaintiff's argument and controlling case law, the Court concludes that the fact that Plaintiff pleaded a declaratory judgment count in this case does not preclude application of section 768.79.  The statute applies here because the "true relief" sought by Plaintiff was monetary rather than nonmonetary.

Plaintiff relies heavily on the decision of the Supreme Court of Florida in Diamond Aircraft Industries, Inc. v. Horowitch, 107 So. 3d 362 (Fla. 2013), but that case does not carry the day for Plaintiff.  There, the court did hold "that section 768.79 does not apply to cases that seek both equitable relief and damages." 107 So. 3d at 372.  But in doing so, the court focused on whether the

---

[8] Plaintiff raised this argument in his responses (Docs. 54, 87, & 89-1) to Defendant's motions for fees, but the Report did not address it, instead finding Defendant's offer of judgment invalid for the two reasons already discussed in this Order.

relief sought in a case is "monetary" or "nonmonetary" rather than the labels used or the manner in which a case is brought.

The Diamond court cited with approval two cases from Florida's Fourth District Court of Appeal that found section 768.79 applicable in cases where the plaintiffs brought claims for declaratory relief.  The Diamond court described the first case, Nelson v. Marine Group of Palm Beach, Inc., 677 So. 2d 998 (Fla. 4th DCA 1996), as "a declaratory action arising from a breach of contract" in which "[t]he only matter at issue was entitlement to money held in escrow."  107 So. 3d at 373.  The district court of appeal applied the offer-of-judgment statute there because "the dispute over the money held in escrow clearly framed the action as an action for damages" even though the buyer had brought the case as a declaratory judgment action.  Id.; see also Nelson, 677 So. 2d at 999.

And the second case noted in Diamond—DiPompeo Construction Corp. v. Kimmel & Associates, Inc., 916 So. 2d 17 (Fla. 4th DCA 2005)—was "a declaratory action in which [the plaintiff] requested that the trial court declare that a contract did not exist and, therefore, the plaintiff was not liable to the defendant for moneys owed under that contract."  Diamond, 107 So. 3d at 373.  The DiPompeo trial court denied the plaintiff's section 768.79 motion for attorneys' fees, but the Fourth District Court of Appeal reversed, concluding "that the plaintiff's claim was in actuality an action for damages because the real issue before the court was whether the plaintiff owed money to the

defendant." Id. (discussing DiPompeo, 916 So. 2d at 18–19).  Thus, even in cases where the only claim is pleaded as a declaratory claim, Florida courts look to the true nature of the relief sought in determining whether the case is "an action for damages" within the meaning of section 768.79.  And they do so even though the statute "must be strictly construed" because it is "in derogation of the common law" and is "penal in nature."  Id. at 372.

The Diamond court also discussed with approval cases in which Florida appellate courts found section 768.79 inapplicable where plaintiffs sought "both monetary and nonmonetary relief" and a "general offer of settlement" was made. Id. at 373–74.  The court noted that in Palm Beach Polo Holdings, Inc. v. Equestrian Club Estates Property Owners Ass'n, Inc., 22 So. 3d 140 (Fla. 4th DCA 2009), the Fourth District Court of Appeal reversed an award of fees under section 768.79 where the plaintiff sought both damages and injunctive relief in the form of "an implied grant of a way of necessity."  See 107 So. 3d at 374 (discussing Palm Beach Polo).  And the court recounted that in Winter Park Imports, Inc. v. JM Family Enters., 66 So. 3d 336, 340 (Fla. 5th DCA 2011), the Fifth District Court of Appeal affirmed the trial court's denial of a motion for section 768.79 fees where the plaintiff had requested both injunctive relief and monetary damages.  See 107 So. 3d at 374–75.

In holding that the statute "does not apply to an action in which a plaintiff seeks both damages and equitable relief, and in which the defendant has served

a general offer of judgment that seeks release of all claims," the <u>Diamond</u> court noted that "[t]he statute does not state that it applies to actions in equity, or in an action . . . where a plaintiff seeks both monetary and nonmonetary relief." 107 So. 3d at 374–75.  The court reasoned that "[i]f the Legislature intended to authorize the recovery of attorney's fees under those circumstances, it could have and would have explicitly provided for them in section 768.79."  <u>Id.</u> at 375.

Finally, the Supreme Court explained in <u>Diamond</u> "that the statutory framework of section 768.79 supports this result. . . . [T]he only method of calculation that the Legislature provided in the statute pertained to the '*amount of the offer*' as compared to the 'judgment obtained.'"  <u>Id.</u> (emphasis in original). "To calculate the *amount* of the judgment obtained in comparison to an offer, logic dictates the use of a monetary number that a court could use in calculating a mathematical formula which exists in a cause of action for damages."  <u>Id.</u> (emphasis in original) (citing § 768.79(6)).  The <u>Diamond</u> court noted that the statute does not, on the other hand, "provide a method by which this or any other court is to evaluate the amount of a nonmonetary judgment obtained against the amount provided in an offer of judgment."  <u>Id.</u>

In decisions since <u>Diamond</u>, Florida courts have continued to find section 768.79 applicable in cases where—regardless of labels applied—the relief sought is monetary.  For example, in <u>Tower Hill Signature Insurance Co. v. Javellana</u>, 238 So. 3d 372 (Fla. 3d DCA 2017), homeowners sued their property

14

insurer, alleging one count of breach of contract and two declaratory judgment counts.  The homeowners rejected the insurer's offer of judgment, and after a trial the insurer moved for attorneys' fees under section 768.79.  Relying on <u>Diamond</u>, the trial court denied the motion "because the . . . complaint sought both equitable relief and money damages."  238 So. 3d at 374–75.  But on de novo review, the Third District Court of Appeal reversed that ruling because it determined that the case "was a civil action for damages" within section 768.79. <u>Id.</u> at 375.

The Third DCA in <u>Tower Hill</u> acknowledged "the well-settled proposition that a party is not entitled to fees under section 768.79 where the plaintiff seeks <u>only</u> nonmonetary relief."  <u>Id.</u> (emphasis in original).  And it recognized that in <u>Diamond</u> "the Supreme Court . . . made it clear that 'section 768.79 does not apply to cases that seek both equitable relief and damages.'"  <u>Id.</u>  (quoting <u>Diamond</u>, 107 So. 3d at 372).  The court then rejected the homeowners' argument that the insurer was not entitled to fees "because their complaint sought both equitable relief and money damages."  <u>Id.</u>  The Third DCA emphasized that in <u>Diamond</u> the Supreme Court "did <u>not</u> hold . . . that a plaintiff can avoid an otherwise valid offer of judgment by merely adding a declaratory judgment count to a cause of action in which the true relief sought is money damages."  <u>Id.</u> at 375–76 (emphasis in original).

The <u>Tower Hill</u> court then read <u>Diamond</u> "in tandem with <u>Nelson</u> and

DiPompeo" and concluded that the case before it was "an 'action for damages[]' within the meaning of section 768.79(1)[] because it [wa]s plain that the true relief sought by the [plaintiffs] was money damages for a breach of contract, rather than equitable relief." Id. at 377. The court explained that the issue raised in the declaratory count "was subsumed within the true relief sought . . . : whether [the insurer] breached the policy by failing to pay actual cash value and if so, the amount of damages for the breach." Id.

Florida's Second District Court of Appeal reached the same conclusion in another post-Diamond decision. In that case—Polk County v. Highlands-in-the-Woods, LLC, 227 So. 3d 161 (Fla. 2d DCA 2017)—the complaint alleged three counts: one for declaratory relief and two for inverse condemnation. But the court noted that "[i]n each count [the plaintiff] sought recovery of the additional development expenses it incurred" due to a county requirement, and "[t]herefore, the 'real issue' in th[e] case was entitlement to damages, not a declaratory judgment." Id. at 163–64.

Other post-Diamond decisions similarly focus on whether the "real issue" in a case is monetary relief, regardless of labels. See Faith Freight Forwarding Corp. v. Anias, 206 So. 3d 753, 754–55 (Fla. 3d DCA 2016) (reversing trial court's denial of section 768.79 fees where the complaint made "passing reference to 'equitable relief'" but no equitable relief was ever at issue); MYD Marine Distrib., Inc. v. Int'l Paint Ltd., 187 So. 3d 1285, 1287 (Fla. 4th DCA 2016)

16

(affirming award of fees even though complaint sought damages and permanent injunctive relief where "the true relief sought . . . was monetary in nature"). Cases in which Florida courts have found the statute not to apply after <u>Diamond</u> have involved claims for injunctive relief or specific performance.[9]  <u>See S. Specialties, Inc. v. Farmhouse Tomatoes, Inc.</u>, 259 So. 3d 869 (Fla. 4th DCA 2018) (reversing fee award where the plaintiff requested both damages and a permanent injunction); <u>Starboard Cruise Servs., Inc. v. DePrince</u>, 259 So. 3d 295, 302 (Fla. 3d DCA 2018) (affirming denial of fees where plaintiff sought damages and specific performance of a contract, noting that "the record does not reflect . . . that . . . the 'true relief' being requested was . . . monetary damages").

In the case at bar, the "true relief" at issue was monetary relief, not nonmonetary relief.  Although Plaintiff filed a two-count complaint requesting both a declaratory judgment and damages, the two counts were intertwined and presented the same question of interpretation of the disability insurance policy and its riders:  what amount of monthly disability benefits is Defendant obligated to pay to Plaintiff after September 1, 2017?  Resolution of this single issue simultaneously determined both what amount is owed since September 2017 and the amount of Defendant's future monthly payment obligation to Plaintiff.  <u>Cf.</u> <u>Tower Hill</u>, 238 So. 3d at 377 (concluding that the question raised

---

[9] To the extent Plaintiff attempts to characterize his declaratory judgment claim as one for specific performance, the Court rejects that characterization.

in the declaratory relief count "was subsumed within the true relief sought"). Because Defendant prevailed, Plaintiff was awarded no damages, but that does not mean that this case was not, at its core, an action seeking only "monetary relief." See Diamond, 107 So. 3d at 373 (equating "damages" with "monetary relief").

And the concern noted in Diamond about a lack of methodology for applying section 768.79 where nonmonetary relief is sought is noticeably absent in the circumstances of this case.  Plaintiff sought a ruling on how much Defendant owes him each month after September 1, 2017, and Defendant offered a specific lump sum and a specific monthly payment.  The amounts in Defendant's offer can readily be compared to the amounts in the judgment, which provided for no lump sum and for no future monthly payments above what Defendant is already paying Plaintiff each month.

Apparently no court has addressed a section 768.79 case involving, in whole or in part, a determination of an amount of future payments, but this Court concludes that the Supreme Court of Florida would, on the facts of this case, find that the offer-of-judgment statute applies and requires an award of attorneys' fees to Defendant.  Like Tower Hill and Highlands-in-the-Woods, this case was a "civil action for damages" under section 768.79.  Therefore, Plaintiff's failure to accept Defendant's offer of judgment entitles Defendant to attorneys' fees.  See Anderson v. Hilton Hotels Corp., 202 So. 3d 846, 856 (Fla. 2016)

(explaining that an award of fees is mandatory under section 768.79 "when the statutory and procedural requirements have been satisfied").[10]

## III.  Amount of Fees

Although the Court concludes that Defendant is entitled to attorneys' fees under Florida's offer-of-judgment statute, Defendant has not established entitlement to all of the fees that it requests.  "Fee applicants must exercise what the Supreme Court has termed 'billing judgment.'" ACLU of Ga. v. Barnes, 168 F.3d 423, 428 (11th Cir. 1999) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).  "That means they must exclude from their fee applications 'excessive, redundant, or otherwise unnecessary [hours] . . . .'" Id. (first alteration in original) (quoting Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292, 1301 (11th Cir. 1988)).  And "[i]f fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are 'excessive, redundant, or otherwise unnecessary.'" Id.  Indeed, "[c]ourts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." Id.

---

[10] There is an exception to automatic entitlement to fees under section 768.79: where "the offer is made in bad faith." Anderson, 202 So. 3d at 856; see § 768.79(7)(a), Fla. Stat. (granting a court discretion not to award fees if it determines the offer was not made in good faith).  There is no suggestion or evidence that Defendant's offer was made in bad faith in this case.

The Court has scrutinized Defendant's submissions to determine a reasonable fee award under § 768.79.  The statute requires that the fees be "calculated in accordance with the guidelines promulgated by the Supreme Court" of Florida.  § 768.79(6)(a); see also Sarkis v. Allstate Ins. Co., 863 So. 2d 210, 213 (Fla. 2003) (explaining that these guidelines are in Rule 4-1.5 of the Florida Bar's Rules of Professional Conduct).[11]  The statute also lists factors that "the court shall consider, along with all other relevant criteria," in

---

[11] The "[f]actors to be considered as guides in determining a reasonable fee" in Rule 4-1.5 include:

> (A) the time and labor required, the novelty, complexity, difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (B) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
> (C) the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature;
> (D) the significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;
> (E) the time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;
> (F) the nature and length of the professional relationship with the client;
> (G) the experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and
> (H) whether the fee is fixed or contingent, and, if fixed as to amount or rate, then whether the client's ability to pay rested to any significant degree on the outcome of the representation.

R. Regulating Fla. Bar 4-1.5(b)(1).

"determining the reasonableness" of a fee award.  § 768.79(7)(b).[12]  The Court has considered these guidelines and factors in reviewing Defendant's fee motions.[13]

### A.    Hourly Rate

In the alternative recommendation in the Report, the magistrate judge recommended that if the Court awards fees, it should use a $355 hourly rate—the rate charged by Defendant's local counsel—instead of the higher rates (ranging from $373.50 per hour to $625 per hour) charged by Defendant's Pennsylvania attorneys.  Defendant objects to this recommendation, but the objection is without merit.

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills,

---

[12] Section 768.79 requires courts to consider:

1.  The then apparent merit or lack of merit in the claim.
2.  The number and nature of offers made by the parties.
3.  The closeness of questions of fact and law at issue.
4.  Whether the person making the offer had unreasonably refused to furnish information necessary to evaluate the reasonableness of such offer.
5.  Whether the suit was in the nature of a test case presenting questions of far-reaching importance affecting nonparties.
6.  The amount of the additional delay cost and expense that the person making the offer reasonably would be expected to incur if the litigation should be prolonged.

§ 768.79(7)(b), Fla. Stat.

[13] Neither party has argued how these guidelines and factors should be weighed and applied in this case.  Defendant merely lists the section 768.79 factors in footnotes in its motions.  (See Doc. 85 at 11–12 n.8; Doc. 89 at 14 n.9).

experience, and reputation." <u>Norman</u>, 836 F.2d at 1299.  "The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed.'" <u>Barnes</u>, 168 F.3d at 437; <u>see also</u> R. Regulating Fla. Bar 4-1.5(b)(1)(C) (providing for consideration of "the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature").  "The applicant [for fees] bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." <u>Norman</u>, 836 F.2d at 1299.

Defendant did not meet its burden of establishing that the higher hourly rates it requests are in line with prevailing market rates in this area.  As noted in the Report, Defendant made no effort in its motions to justify the out-of-market rates it requests.  Defendant's objection on this point is overruled, and the Court will use the $355 hourly rate of Defendant's local counsel across the board in calculating the fee award.

### B.    Reasonable Number of Hours

#### 1.    *Motion for District Court Fees (Doc. 85)*

In its Renewed Motion (Doc. 85) for fees incurred in this Court, Defendant requests $8,407.50 in fees, representing 18.6 hours of attorney time (at various hourly rates).  The 18.6 hours that Defendant claims consist of:  6.8 hours "[d]iscussing the matter internally and externally with" the client; 3.2 hours "[a]nalyzing Plaintiff's motion for summary judgment"; 3.7 hours "[a]ddressing

22

the then-upcoming pretrial and trial deadlines, including filing a joint motion to adjourn the deadlines pending resolution of the motion for summary judgment"; 1.5 hours "[a]nalyzing Plaintiff's improper (and stricken) motion to amend the judgment"; and 3.4 hours drafting the original and amended motions for district court fees and costs. (Doc. 85-2 at 4–5). Some of these hours are excessive.

First, the 3.2 hours for "[a]nalyzing Plaintiff's motion for summary judgment" will not be allowed. Plaintiff filed his motion for summary judgment in December 2018, and Defendant filed its response to that motion well before tendering its offer of judgment to Plaintiff in April 2019. The Court can discern no basis for Defendant's attorneys spending an additional 3.2 hours "analyzing" the motion after briefing was completed and the offer of judgment had been made. The motion was ripe and pending before the Court; nothing was left for the parties to do but await the Court's ruling. No fees will be awarded for this task.

Second, the claimed 3.7 hours for addressing upcoming deadlines and filing a joint motion are excessive. After the parties completed their summary judgment briefing, they filed a joint motion to remove the case from the trial calendar and to suspend all deadlines, noting that they agreed that no trial would be necessary because the pending summary judgment ruling would be dispositive of the case one way or the other. (Doc. 44 at 2). Defendant claims

3.7 hours for dealing with this issue and filing the joint motion, but that amount of time is not reasonable.  The Court will allow one hour of reimbursable time for this task. [14]

In total, the Court has deducted 5.9 hours from Defendant's claimed 18.6 hours of post-offer district court time.  Defendant will be awarded district court attorneys' fees for 12.7 hours.

2.      *Motion for Appellate Court Fees (Doc. 89)*

In its motion for appellate attorneys' fees (Doc. 89), Defendant requests fees of $83,038.25 for 166.5 hours expended on appeal starting on October 10, 2019.  (Doc. 89 at 15).  But the claimed number of hours is not reasonable and will be reduced.

Defendant describes most of the attorney time spent on appeal as:  7.7 hours "analyzing and discussing the status and litigation strategy"; 1.2 hours analyzing Plaintiff's appellate brief; 22.3 hours drafting Defendant's appellate brief; 70.6 hours "preparing for and engaging in oral argument"; and 55.5 hours briefing fees and costs issues.  (Doc. 89 at 26).  Some of these claimed hours are excessive and will not be permitted.

As an initial matter, there is some duplication in the hours claimed in the

_____

[14] Of course, the parties could have avoided having to spend any time on this task at all by informing the Court in their summary judgment papers—filed months earlier—that they agreed the summary judgment ruling would dispose of the case.

district court fee motion (Doc. 85) and the appellate fee motion (Doc. 89). [15] Although Defendant states in the motion that it seeks fees from October 10, 2019—the date that Plaintiff filed his Notice of Appeal (Doc. 61)—the supporting documentation also includes fees from September 9, 2019, to October 8, 2019—before the Notice of Appeal was filed, (see Doc. 93-1 at 2–3). And some of the entries for that one-month period appear to reflect work already claimed in the district court motion. For example, there are several entries for attorney-fee motion preparation, (id.), and the only fee motion Defendant could possibly have been working on at that time is the district court motion—for which Defendant already claimed hours in its district court motion, (see Doc. 85-2 at 5). Defendant also claims fees in that period for 1.5 hours for reviewing and analyzing Plaintiffs' motion to amend, (see Doc. 93-1 at 2)—something Defendant also claimed in the district fee motion, (see Doc. 85-2 at 5). To ensure that no duplicative fees are awarded, and to award Defendant fees starting on October 10, 2019, as requested, (see Doc. 89 at 15), the Court will not award any fees on the appellate motion for hours prior to October 10, 2019. This results in a reduction of 28 hours from the 166.5-hour total.

---

[15] Some of the hours described in the supporting documentation for the appellate fee motion were hours spent on district court matters while the appeal was being pursued. The Court has allowed those hours except as modified for other reasons, though arguably they should have been included in the renewed district court fee motion instead of the appellate fee motion.

Next, the Court finds that 70.6 hours "preparing for and engaging in oral argument" is excessive.   First, Defendant ascribes 17.8 of these hours[16] to researching the panel of oral argument judges.  (See Doc. 93-1 at 5–6).  Eighteen hours of panel research in a case about interpretation of a disability insurance contract is not reasonable.   The Court reduces these hours from 17.8 to 2. Additionally, considering the nature of the case—again, this case involved a discrete issue of interpretation of one particular contract with which counsel was already very familiar, and there was little case law to master—the Court further reduces the remaining "oral argument prep" time by another 15 hours— approximately 30%.

Finally, Defendant's claimed 55.5 hours of attorney time spent on briefing fee issues is excessive.  The magistrate judge recommended in the Report that these hours be cut in half.  (See Doc. 94 at 9).  Defendant has not objected to that reduction.[17]  Thus, these 55.5 hours will be reduced to 27.75 hours.

In sum, Defendant will be awarded fees for 79.95 (166.5 − 86.55) of the hours in its appellate fee motion.

---

[16] This includes several block-billed entries that make it impossible to tell how much time was spent on "panel research" as opposed to other tasks.

[17] Defendant objected that the magistrate judge did not include time spent on the substance of the appeal, but Defendant has not challenged the magistrate judge's conclusion that the time spent briefing fees and costs issues was excessive and should be cut in half.  (See Doc. 95 at 13–14).

### 3.   Total Fee Award

As stated above, the Court awards Defendant 12.7 hours of fees at an hourly rate of $355 on its district court motion—$4,508.50.  And the Court awards Defendant 79.95 hours of fees at an hourly rate of $355 on its appellate motion—$28,382.25.  This results in a total fee award of $32,890.75.[18]

## IV.   Conclusion

Accordingly, it is **ORDERED** as follows:

1.    Defendant's Objections (Doc. 95) to the Report and Recommendation (Doc. 94) are **sustained** to the extent set forth in this Order. The Report (Doc. 94) is **rejected** except insofar as it recommends reducing the hourly rate and some of the hours claimed by Defendant in its motions.

---

[18] This award is reasonable in light of the mandatory factors in section 768.79(7)(b).  As to the first and third factors—the apparent merit of the claim and the closeness of questions of law at issue, there was an understandable dispute between the parties over interpretation of the disability insurance policy and its riders, and a Massachusetts court had previously interpreted the policy in a manner favorable to Plaintiff's position.  This Court ultimately disagreed with that decision, and the Eleventh Circuit affirmed.  These factors do not warrant a fee adjustment beyond those already noted.  With regard to the second factor—"number and nature of offers made"—the Court is aware of only one offer, and as discussed earlier it was a clear and easily understandable offer.  Next, Plaintiff has not argued that Defendant "unreasonably refused to furnish information necessary to evaluate the reasonableness of [the] offer," § 768.79(7)(b)(4), nor does the Court discern any need for such information; again, the offer was clear.  And this case was not "in the nature of a test case" under section 768.79(7)(b)(5).  Finally, no significant "delay cost and expense" under section 768.79(7)(b)(6) has been identified here.

2.      Defendant's Renewed Application for Attorneys' Fees and Costs (Doc. 85) is **GRANTED in part and DENIED in part** as set forth in this Order.

3.      Defendant's Application for Attorneys' Fees Pursuant to 11th Cir. R. 29-2 (Doc. 89) is **GRANTED in part and DENIED in part** as set forth in this Order.

4.      Defendant is awarded attorneys' fees in the amount of $32,890.75.

5.      The Clerk is directed to enter a judgment providing that Defendant shall recover from Plaintiff the sum of $32,890.75 for attorneys' fees, for which let execution issue.

**DONE** and **ORDERED** in Orlando, Florida, on September 28, 2021.

JOHN ANTOON II
United States District Judge

Copies furnished to:
United States Magistrate Judge
Counsel of Record

28